UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
HEIDE JORDAN,

                        Plaintiff,

  -v-                                              5:10-CV-1197

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL    JOANNE JACKSON, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

     This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability and Supplemental Security Income benefits. The parties have filed their briefs, including the

---

[1] Carolyn W. Colvin ("Colvin) became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to change the caption to reflect this change.

Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Heide Jordan ("plaintiff" or "Jordan") filed an application for social security disability benefits on October 31, 2006, claiming a period of disability beginning on September 8, 2006. Her claims were denied and she requested a hearing. A hearing was held before an Administrative Law Judge ("ALJ") on June 25, 2009. The ALJ rendered a decision on July 30, 2009, denying plaintiff's claim. Plaintiff appealed the ALJ's decision and submitted additional evidence to the Appeals Council. On September 28, 2010, the Appeals Council declined further review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)). Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings.

Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

## B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination

of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id.

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy,

heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## C. Analysis

Jordan makes five arguments in support of her contention that the Commissioner's decision should be reversed. First, she argues that the ALJ erred at Step 2 by not evaluating her obesity and fibromyalgia, and finding her depression and headaches were not severe. Second, plaintiff contends that the ALJ failed to make a function-by-function finding resulting in an RFC finding unsupported by substantial evidence. Third she argues that the ALJ failed to follow the treating physician rule. Fourth, according to Jordan the ALJ did not evaluate her credibility by the appropriate legal standards. Finally, she asserts that the ALJ erred in not consulting a Vocational Expert.

### 1. Step Two determination–obesity, fibromyalgia, depression, headaches

The ALJ did not mention Jordan's obesity and fibromyalgia in his Step 2 analysis. There was no mention in the medical records of any obesity-related impairment. Further, it was clear from the office notes or examination reports of Drs. Schaeffer, Noia, Shayevitz, and Alvarez that these medical providers were aware of her obesity, yet made no comment about any impairment Jordan suffered as result. See, e.g., Tr. at 240, 183, 187, 194.

Plaintiff suggested to her treating physician Dr. Schaeffer on February 3, 2009, that she may have fibromyalgia. Id. at 267. Dr. Schaeffer noted 16/18 palpable trigger points, particularly in the cervical, lumbar, and thoracic paraspinal areas. Id. He also found that Jordan's movements were fluid, and her mobility, transfers, ambulation, and station were within normal limits. Id. Further, his impressions did not include a diagnosis of fibromyalgia. Id.

As for alleged depression, the ALJ recognized that plaintiff apparently had been diagnosed with some sort of depression. See id. at 38. However, there is no medical evidence of any depression or other mental health issues. Jordan asserts that Dr. Schaeffer treated her for depression on November 1, 2006. However, the office notes for that day state that plaintiff "is feeling depressed due to the ongoing severe pain" and nothing in the "impression" paragraph indicates a diagnosis of depression. Id. at 239–41. Plaintiff also points to the report from the consultative psychiatrist Dr. Noia, who found that plaintiff was depressed. While Dr. Noia found that Jordan was depressed, he also found that her depression did not interfere with her ability to function. Id. at 185.

According to plaintiff, she has had severe headaches and has been treated for them with prescription medication. Each part of the record to which plaintiff points for support of her contention of disabling headaches contains her own reports of headaches and treatment for them, rather than a medical source making a diagnosis and prescribing medication. See id. at 105, 114, 186, 194, 230, 250, 268.

Substantial evidence supports the ALJ's determination at Step 2, including not mentioning obesity and fibromyalgia, as well as finding that Jordan's depression and headaches were not severe.

### 2. **Function-by-function finding**

The ALJ determined that plaintiff had the RFC to perform light work except for the need to avoid concentrated exposure to wetness, humidity, and fumes; and a need for simple work. Jordan argues that this determination failed to comply with SSR 96-8p.

Dr. Shayevitz performed a consultative examination on November 30, 2006. She opined that Jordan's "multiple moderate problems . . . limit very prolonged sitting, standing, and walking." Id. at 189. She further opined that plaintiff would have difficulty with rapid neck movements, heavy lifting, or repetitive flexing or bending of the lumber spine." Id. at 189–90. The ALJ described Dr. Shayevitz's opinions and found them to be supported by objective clinical and laboratory findings. Id. at 40.

Dr. Alvarez performed an independent orthopedic evaluation on January 19, 2007. He opined that plaintiff had a "moderate, partial, ongoing orthopedic disability." Id. at 195. He cleared Jordan for return to light work, stating that she could lift and carry up to twenty pounds, push and pull occasionally, but must restrict repeated and sustained bending, lifting and twisting motions of the neck and back. Id. at 196. The ALJ considered Dr. Alvarez's opinion and found it consistent with Dr. Shayevitz's opinion. Id. at 40.

On November 1, 2006, Dr. Schaeffer found plaintiff with temporary total disability after her work-related low-back injury of September 8, 2006. Id. at 241. At her next appointment he discussed returning to work with her. Id. at 237. About six weeks later, on December 13, 2006, he cleared her for light work with no weights over twenty pounds. Id. at 236. On January 13, 2007, Dr. Schaeffer noted that plaintiff had a partial disability status cleared for light duty work with no weights over 20 pounds, but she had not returned to work because of the unavailability of light work. Id. at 231. He reiterated her partial disability status and

- 8 -

clearance for light work with weight restriction, and current unavailability of light work. Id. at 230. He continued to find her partially disabled, although stopped repeating her clearance for and the unavailability of light work with weight restriction. See, e.g., 258, 253, 249, 247. The ALJ reviewed these reports by Dr. Schaeffer in considering plaintiff's RFC.

The ALJ based his RFC upon the evaluations and reports just noted. Although he did not individually address each function, such as sit, stand, walk, and lift, his review of the medical evidence of the record accomplished the same assessment as required by SSR 96-8p. This is particularly so in light of the complete absence in the record of any other evidence of functional limitations.[2] Thus, even if the ALJ made a function-by-function finding, his conclusion would have remained the same. Failure to discuss each and every functional limitation, as plaintiff argues is required by SSR 96-8p, need not be determinative of an appeal, especially where, as here, the record would support no result other than the one reached by the ALJ. See O'Connor v. Comm'r of Soc. Sec., No. 5:11-CV-1425, 2013 WL 1180963, at *7–8 (N.D.N.Y. Mar. 20, 2013) (McAvoy, J.) (finding that upon review of the record as a whole ALJ properly assessed evidence to find RFC and recognizing that ALJ's failure to perform function-by-function analysis could be harmless error if the overall RFC assessment was susceptible to meaningful review); Dillingham v. Astrue, No. 5:09-CV-236, 2010 WL 3909630, at *11–12 (N.D.N.Y. Aug. 24, 2010) (Bianchini, Mag. J.) (discussing desirability of function-by-function analysis and the meaningfulness of review of the ALJ's assessment lacking such analysis), adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010) (Sharpe, J.).

---

[2] The one RFC questionnaire by Dr. Schaeffer indicates severe impairments of function. This is addressed in the following subsection regarding the treating physician rule.

The ALJ's assessment of plaintiff's RFC, while not technically meeting the function-by-function analysis requirement of SSR 96-8p, is supported by substantial evidence.

### 3. **Treating Physician Rule**

Jordan argues that the ALJ improperly failed to give controlling weight to the opinion of her treating physician Dr. Schaeffer. Rather, according to plaintiff, the ALJ gave great weight to a consultative examiner, Dr. Shayevitz.

Again, Dr. Schaeffer found that, although plaintiff suffered from a partial disability, she was capable of performing light work as of December 13, 2006, so long as there were no weight greater than twenty pounds. R. at 236. Dr. Schaeffer's office notes show that he did not change this finding through at least March 3, 2009. Id. at 230, 231, 246, 263, 262, 258, 253, 252, 251, 250, 249, 248, 247, 269, 268, 267, 266 (record citations in chronological order). As recognized by the ALJ, these opinions were "well supported by the objective clinical and laboratory findings and consistent with all evidence in the medical record." Id. at 40. Therefore, the ALJ gave "greatest weight" to these opinions in assessing Jordan's RFC. Id. The ALJ gave great weight to consulting examining physicians Dr. Shayevitz and Dr. Alvarez because of their "fundamentally consistent opinions." Id.

The ALJ refused to give credence to an RFC questionnaire by Dr. Schaeffer dated January 6, 2009.[3] This questionnaire indicated that plaintiff could never lift or carry anything, could sit, stand, or walk less than one hour at one time without interruption, could never climb ladders, balance, kneel, or crouch, and could occasionally climb stairs and stoop. Id. at 264–65. As stated by the ALJ, if one accepted these limitations plaintiff would be "severely

---

[3] Although the date is illegible on the form, office notes from January 6, 2009, indicate that Dr. Schaeffer completed the RFC questionnaire on that date. Id. at 268.

disabled and probably essentially bedridden." Id. at 40.  These limitations reflected in the RFC questionnaire are completely inconsistent with all the medical evidence in the record, including the consultative examiners and the treating physician Dr. Schaeffer himself.  It was perfectly proper to give little weight to this RFC assessment, as the ALJ did.  Id. at 40–41; see Poupore, 566 F.3d at 307.

The ALJ did not violate the treating physician rule in discounting the treating physician's RFC opinion because it was inconsistent with all the other evidence in the record and was not supported by any medical evidence.

### 4. **Credibility of plaintiff**

A plaintiff's subjective complaint "of pain is an important factor to be considered in determining disability."  Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984).  An ALJ, although permitted to independently judge subjective complaints of pain, must "'evaluate the credibility of a claimant . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'"  Id. at 186 (quoting McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).  The credibility evaluation must also include consideration of plaintiff's "demeanor, testimony regarding his symptoms and daily activities and other evidence."  Diaz v. Bowen, 664 F. Supp. 725, 730 (S.D.N.Y. 1987) (citing Marcus, 615 F.2d at 27).  If substantial evidence supports the ALJ's assessment of plaintiff's credibility, that assessment will be given great deference.  O'Connor, 2013 WL 1180963, at *9.  The ALJ's assessment of plaintiff's credibility will be rejected only where it is clearly erroneous.  Id.

Jordan arrived at the hearing before the ALJ on June 25, 2009, using a cane to ambulate.  R. at 17.  She explained that it was prescribed for her during an emergency room

visit. Id. However, her treating physician Dr. Schaeffer advised her to stop using the can during an office visit on June 25, 2008. Id. at 249. This inconsistency undermines plaintiff's credibility.

Further undermining her credibility was plaintiff's testimony at the hearing before the ALJ regarding her daily activities. See id. at 20–25. According to Jordan's testimony, about all she can do is take her dog outside—other family members cook, do laundry, vacuum, sweep, and mop. Id. at 20–21. She rarely goes anywhere alone; for example, she may go along with her son to the grocery store, but he carries the groceries. Id. at 21. Plaintiff testified that she lies in bed, watches television, and goes to church and doctors' appointments, but does no other activities or socializing. Id. at 22–23, 26. She does drive, but has one of her sons ride up front with her to look to the side because she cannot do it. Id. at 23.

In addition to plaintiff's testimony that her limitations preclude her from doing virtually anything, Dr. Shayevitz questioned Jordan's effort during the consultative examination, although she did note that plaintiff appeared to be guarding. Id. at 188. As set forth above, the objective medical evidence supports some limitations in plaintiff's ability to function at work, but no where near to the extent that she claims. Substantial evidence supports the ALJ's determination that Jordan was less than credible. Therefore, his determination must be given great deference. The ALJ's assessment of plaintiff's credibility was not clearly erroneous and will not be rejected.

### 5. Failure to consult a vocational expert

Jordan argues that the ALJ erred in failing to call a vocational expert because she suffers from significant mental limitations from depression and nonexertional limitations, such as pain and postural limitations.

When a claimant suffers from a nonexertional limitation that "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity," the ALJ should obtain the testimony of a vocational expert to assure that work exists in the national economy that the claimant can perform. Bapp v. Brown, 802 F.2d 601, 606 (2d Cir. 1986).

As discussed above, there is no evidence in the record indicating "significant mental limitations" from depression. Dr. Noia noted that plaintiff had difficulty dealing with stress and depression, but opined that there was no interference with her ability to function. Id. at 185. Her depression has not narrowed Jordan's possible range of work. Moreover, plaintiff does not point to any evidence in the record to demonstrate any other nonexertional limitations. Therefore, a vocational expert was not needed.

## IV. CONCLUSION

Substantial evidence supports the ALJ's Step 2 analysis and conclusion. The ALJ failed to do a function-by-function analysis when determining Jordan's RFC. However, this failure was harmless error as substantial evidence supports his RFC assessment. The ALJ properly gave great weight to plaintiff's treating physician Dr. Schaeffer's opinions except his January 6, 2009, RFC questionnaire which was inconsistent with the other evidence in the record, including Dr. Schaeffer's own opinions. The ALJ properly found the plaintiff less than credible. Finally, the ALJ did not err in not consulting a vocational expert.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 17, 2013
     Utica, New York.